IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT
OF NORTH CAROLINA
No. 1:22-cv-611

COMMON CAUSE, ELIZABETH MARION SMITH, SETH EFFRON, JAMES M. HORTON, and TYLER C. DAYE,

*Plaintiffs,*

v.

TIMOTHY K. MOORE, Speaker, North Carolina House of Representatives; and PHILLIP E. BERGER, President Pro Tempore, North Carolina Senate;

*(all in their official capacity only)*

*Defendants.*

# COMPLAINT

This is an action to declare unconstitutional the provisions of North Carolina General Statute § 163-19 that prohibit, without valid reason, unaffiliated voters from being appointed to the State Board of Elections (hereinafter "State Board"), thus barring all of them from participating in the supervision, management and administration of North Carolina's federal, state and local elections.

1

## PLAINTIFFS

1. Plaintiff Common Cause is a non-profit corporation organized and existing under the laws of the District of Columbia. It has local organizations in 35 states, including North Carolina, and more than 450,000 members nationally. More than 30,000 Common Cause members are registered to vote in North Carolina. Membership in Common Cause is open to all persons without regard for their political party or affiliation, and many of its officers and members nationally and in North Carolina are registered unaffiliated. Since its founding by John Gardner in 1970, Common Cause has been dedicated to ensuring fair and open elections in which all citizens are encouraged and allowed to participate regardless of party.

2. Common Cause brings this action on its own behalf and on behalf of its North Carolina members to challenge North Carolina's laws that deny all unaffiliated voters the opportunity to participate in the supervision, management and administration of the state's elections through service on the State Board because of their constitutionally protected decisions not to affiliate with either the Republican or Democratic parties.

3. The individual plaintiffs are voters who are qualified and desire to serve on the State Board but are barred from serving on the Board because of

their status as unaffiliated voters, in violation of their constitutional rights to free speech, freedom of association, and equal protection.

4. Plaintiff Elizabeth Marion Smith resides in Raleigh and is registered to vote in Wake County. When Ms. Smith first registered to vote she registered as a Republican. Later she registered as a Democrat. Over time, however, Ms. Smith concluded that the policies and practices of both the Republican and Democratic parties were inconsistent with her own views. Accordingly, Ms. Smith registered as an unaffiliated voter in 2015, and remains an unaffiliated voter today.

5. Ms. Smith has degrees from Smith College and the University of North Carolina at Chapel Hill, and served for many years as a librarian in both public and private schools in North Carolina. She is well-qualified to serve, and is willing to serve, on the State Board, but is barred from holding that office by North Carolina law. Moreover, Ms. Smith is unwilling to become eligible for that office by compromising her beliefs and registering as a Republican or Democrat.

6. Plaintiff Seth Effron is a registered unaffiliated voter in Beaufort County, and previously was registered as unaffiliated in Wake County for approximately 35 years. Mr. Effron is a journalist with a long career covering government and politics. He was a Nieman Fellow at Harvard and has also

held public information positions in state government. For the last six years, Mr. Effron has been the opinion editor for a Raleigh broadcasting company.

7. Mr. Effron votes in every election and has voted in both Democratic and Republican primaries depending on the candidates and the importance of the races. Mr. Effron has the skills and experience appropriate for the State Board and believes people like him should be able to serve on the State Board.

8. Plaintiff James M. Horton is a resident of Mecklenburg County and has been registered as unaffiliated since the 1990s. He is a graduate of Duke University and Duke Medical School, and served as chief of the Faculty Division of Infectious Diseases for the Carolinas Medical Center. His numerous honors include the Watanakunakorn Clinician Award from the Infectious Diseases Division of America, Attending of the Year at Charlotte Memorial Hospital, and Charlotte Observer Citizen of the Year. Dr. Horton has chaired the Mecklenburg County Environmental Protection Committee, its Mountain Island Watershed Protection Committee, and the Health Education Committee for the Charlotte-Mecklenburg Public Schools.

9. Dr. Horton first registered to vote in North Carolina in 1984 as a Democrat but switched to unaffiliated in the 1990s and has remained unaffiliated since then. He has contributed to both Republican and Democratic candidates, has voted in each party's primary at different times depending on

4

the importance of the races and his interest in particular candidates. He remains unaffiliated because he generally favors a more moderate approach than either major party. Dr. Horton is fully qualified and has the experience to be a member of the State Board of Elections and would like to serve on the State Board.

10. Plaintiff Tyler Christopher Daye resides in Guilford County and is registered as an unaffiliated voter in Guilford County. Mr. Daye turned 18 on November 7, 2013 and became a registered voter on that date. He first registered as a Democrat but changed his registration to unaffiliated in January 2022 because of his desire not to be labeled a member of any current political party. In his view, political parties are the principal cause of the extreme polarization and tension in today's world.

11. Mr. Daye is a graduate of the University of North Carolina at Greensboro. He has a deep interest in our election systems and practices. This interest is reflected in his employment since graduation. Mr. Daye is currently employed as a member of the staff of Common Cause North Carolina. He previously worked with the League of Women Voters and Democracy North Carolina. This interest is also reflected his appointment by the Guilford County Board of Elections to serve as chief judge of one of Guilford County's precincts. Mr. Daye is fully qualified by interest and experience for appointment to the

State Board. He is interested in serving on the State Board but is barred from fulfilling that interest by his status as an unaffiliated voter.

## DEFENDANTS

12. Defendant Timothy K. Moore is Speaker of the North Carolina House of Representatives. He is sued in his official capacity only.

13. Defendant Phillip E. Berger is President Pro Tempore of the North Carolina Senate. He is sued in his official capacity only.

14. The North Carolina General Assembly has declared that the President Pro Tempore of the Senate and the Speaker of the House of Representatives "jointly constitute the legislative branch of the State of North Carolina" in any lawsuit challenging the constitutionality of any act of the General Assembly. N. C. Gen. Stat. § 1-72.2.

15. Defendants Moore and Berger are charged by their oaths of office with protecting the rights of all North Carolinians under the United States and North Carolina Constitutions. N. C. Gen. Stat. § 11-7.

## JURISDICTION AND VENUE

16. This action arises under 42 U.S. Code § 1983 based on defendants' denial under color of state law of plaintiffs' rights secured by the United States Constitution.

17. This court has original jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343 because the matter in controversy arises under the United States Constitution.

18. Venue is proper in this court under 28 U.S.C. § 1391(b) because a substantial portion of the events giving rise to the claims alleged in this complaint occurred in this district, and each defendant conducts business in the district.

19. This court has authority to enter a declaratory judgment and to provide injunctive relief pursuant to Rules 57 and 65 of the Federal Rules of Civil Procedure and 28 U.S.C. §§ 2201 and 2202.

20. This court has personal jurisdiction over defendants because each is a citizen of North Carolina.

## FACTS

### The Broad Powers of the State Board

21. The North Carolina General Assembly has conferred on the State Board broad and exclusive powers and duties for the supervision, management, and administration of all federal, state, and local elections.

22. The broad and exclusive powers and duties conferred on the State Board by the General Assembly include *inter alia*:

- the promulgation of rules for the conduct of all elections;

- the appointment of four of the five members of each of the 100 county boards of elections;
- the appointment of the executive director of the State Board, who in turn appoints the director of each county board;
- the training and supervision of all 100 county boards of election;
- the removal of members of local boards for misconduct following an investigation and hearing;
- the investigation of election law violations;
- the determination of the form and content of ballots, instruction sheets, pollbooks, and other election documents;
- the approval of voting machines;
- the certification of notices of candidacy;
- the approval of precinct lines;
- the approval of polling places and times and places for one-stop absentee voting;
- the preparation of abstracts of election results;
- the resolution of appeals on challenges to candidate qualifications;
- the declaration of the winners of primaries and general elections; and
- the ordering of new elections.

N. C. Gen. Stat. § 163-22.

23. The State Board's broad powers and duties also include quasi-judicial functions. For example, the powers conferred on the State Board by the General Assembly include the powers to receive protests of elections, conduct evidentiary hearings on those protests, and order elections voided and new elections held, without court action. N.C. Gen. Stat. § 163-182.13.

**Defendants Have Barred Plaintiffs and All Other Unaffiliated Voters from Appointment to the State Board**

24. The broad and exclusive powers and duties entrusted to the State Board by the General Assembly substantially affect all North Carolinians and every election in North Carolina for federal, state, and local office.

25. The General Assembly, nevertheless, has enacted laws denying plaintiffs and all other unaffiliated voters the opportunity to be appointed to the State Board and participate in the supervision, management, and administration of these elections, solely because they are not registered as Democrats or Republicans.

26. N. C. Gen. Stat. § 163-19 limits qualification for appointment by the governor to the State Board to voters registered as Republicans or Democrats, and all voters registered as unaffiliated with either of those two political parties are disqualified from appointment. This law renders plaintiffs, and all other unaffiliated voters, ineligible to serve on the State Board.

9

27. This statutory ban on unaffiliated voters serving on the State Board disqualifies millions of citizens from the opportunity to serve on the State Board.

28. The State Board maintains and regularly publishes extensive data about North Carolina's registered voters. As of July 30, 2022, the State Board's published data established that 2,576,374 North Carolinians were registered unaffiliated.

29. Unaffiliated voters in fact constitute the largest set of registered voters in North Carolina. As of July 30, 2022, North Carolina had 7,327,165 registered voters of whom 2,576,374 (35.16%) were registered as unaffiliated, 2,491,151 (34.00%) were registered as Democrats, and 2,210,269 (30.17%) were registered as Republicans.

30. These unaffiliated voters are spread across the state. As of July 30, 2022, unaffiliated voters were the largest group of voters in 19 of the state's 100 counties and second largest in another 72 counties. They trailed both Democrats and Republicans in only nine counties.

31. As of July 30, 2022, unaffiliated voters were most numerous in a wide range of counties, from fast-growing urban areas like Wake, Buncombe, Cabarrus, and New Hanover, to mostly rural counties in the historically Republican west (e.g., Haywood, Jackson, Madison, Swain) and the historically

Democratic east (e.g., Camden, Currituck, Dare, and Perquimans). In all seven counties with the highest voter registration (Wake, Mecklenburg, Guilford, Forsyth, Durham, Buncombe, and Cumberland) unaffiliated voters outnumbered Republicans.

32. The growth in unaffiliated registration is likely to accelerate as young people come of age to vote. As of April 16, 2022, 42 percent of North Carolina voters aged 25-40 were registered unaffiliated, and 47 percent of those under 25.

33. The ban on unaffiliated voters serving on the State Board is complete. All current members of the State Board are registered as Democrats or Republicans.

34. In the 120-year history of the State Board, only one unaffiliated voter is known to have ever been appointed to the State Board and that service was brief and anomalous. In legislation effective March 16, 2018, the General Assembly amended G.S. § 163-19 to require the Governor to appoint one unaffiliated voter to the State Board. *See* 2018 NC Session Law 2, Part VIII. This policy change was short lived. Effective December 27, 2018, 2018 Session Law 2 was repealed and the ban on unaffiliated voters serving on the State Board restored. 2018 NC Session Law 146, § 3(b).

## The Ban on Unaffiliated Voters Has No Valid Purpose and Harms the Plaintiffs and All Other North Carolinians

35. An open, fair, and efficient system for the supervision, management and administration of elections is essential to the integrity of our democracy.

36. It is crucial to the American system of government that the public have confidence in the fairness and nonpartisan administration of elections.

37. In North Carolina, the State Board is responsible for assuring that all voters and candidates, including those voters and candidates not affiliated with the Democratic or Republican parties, are treated equally and fairly.

38. The state law barring plaintiffs and all other unaffiliated voters from serving on the State Board serves no public or valid purpose but instead is a means to entrench the Democratic and Republican political parties in power and give them exclusive control over the supervision, management, and administration of the elections system.

39. This law is ill-conceived because it renders ineligible a large pool of talented and able citizens from service on the State Board.

40. This law is arbitrary and capricious and not rational because it excludes from service on the State Board voters who are not aligned with a

political party and are thus more likely to fairly and impartially participate in the supervision, management, and administration of the elections system.

41. This law is destructive of our democracy because it undermines citizens' confidence in the elections system. Limiting service on the State Board to members of the Democratic and Republican parties encourages citizens to believe that election officials are chosen to look out for their parties' interests rather than see that elections are conducted fairly for all.

42. This law harms plaintiffs and all other unaffiliated voters and is invalid because it treats the eligibility of plaintiffs, and all other unaffiliated voters, for public office differently than registered Republican or Democratic voters without valid reason.

43. This law harms plaintiffs and all other unaffiliated voters and is invalid because it discriminates against plaintiffs, and all other unaffiliated voters, with regard to the opportunity to participate in the supervision, management and administration of the state's elections system without valid reason.

44. This law harms plaintiffs and all other unaffiliated voters and is invalid because it renders plaintiffs, and all other unaffiliated voters, ineligible for public office based upon their political views without valid reason.

45. This law harms plaintiffs and all other unaffiliated voters and is invalid because it penalizes plaintiffs, and all unaffiliated voters, without valid reason because of their decisions not to affiliate with either the Republican or Democratic parties.

## FIRST CLAIM FOR RELIEF
### Denial of Free Speech and Freedom of Association
### First Amendment, United States Constitution

46. The allegations of the preceding paragraphs are incorporated by reference.

47. The First Amendment to the United States Constitution, enforceable through 42 U.S.C. § 1983, provides that no state make any law "abridging the freedom of speech," which right includes the right of freedom of association.

48. N.C. Gen. Stat. § 163-19 abridges plaintiffs' freedom of speech, and limits their freedom of association, by requiring as a condition of serving on the State Board that they affiliate with either the Democratic or Republican party despite their independent political beliefs.

49. This restriction on plaintiffs' right to freedom of speech and association is based solely on the political beliefs and associations of the plaintiffs and all other unaffiliated voters.

50. This restriction on plaintiffs' right to free speech and association is severe because it bars them entirely and completely from the opportunity to participate in the supervision, management, and administration of elections for public office.

51. North Carolina's law excluding plaintiffs and all other unaffiliated voters from serving on the State Board has the effect and is intended to entrench the established Democratic and Republican political parties, and that interest is not rationally related to any legitimate, valid, important, or compelling governmental interest.

52. North Carolina's law excluding unaffiliated voters from serving on the State Board is not rationally related to achieving any legitimate, valid, important, or compelling governmental interest.

53. Plaintiffs are otherwise qualified to serve on the State Board and are denied the right to do so only because of their refusal to accept affiliation with the Democratic of Republican party.

## SECOND CLAIM FOR RELIEF
## Denial of Equal Protection
## Fourteenth Amendment, United States Constitution

54. The allegations of the preceding paragraphs are incorporated by reference.

55. The Fourteenth Amendment to the United States Constitution, enforceable through 42 U.S.C. § 1983, provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws."

56. The right to vote is a fundamental right and includes the right to participate fully in all aspects of elections.

57. N.C. Gen. Stat. § 163-19 discriminates against plaintiffs, and all other unaffiliated voters, by denying them the same opportunity as registered Democrats and Republicans to be a member of the State Board of Elections and participate equally in the supervision, management, and administration of elections in North Carolina.

58. North Carolina's law excluding plaintiffs and all other unaffiliated voters from serving on the State Board has the effect and is intended to entrench the established Democratic and Republican political parties, and that interest is not rationally related to any legitimate, valid, important, or compelling governmental interest.

59. North Carolina's law excluding plaintiffs and all other unaffiliated voters from serving on the State Board is not rationally related to achieving any legitimate, valid, important, or compelling governmental interest.

60. Plaintiffs are otherwise qualified to serve on the State Board and are denied that opportunity solely because of their political beliefs and affiliation.

## PRAYER FOR RELIEF

WHEREFORE, plaintiffs request that this Court:

1. Declare unconstitutional and void, in violation of the First and Fourteenth Amendments, the provisions of N. C. Gen. Stat. § 163-19 restricting appointments to the State Board of Elections to voters registered as Democrats or Republicans and limiting appointments to voters recommended by those political parties;
2. Enjoin defendants from enacting any state law for the appointment of the State Board of Elections that discriminates against unaffiliated voters or penalizes them based on their decisions not to register as Republican or Democrats;
3. Award plaintiffs their costs, expenses, and reasonable attorney's fees pursuant to 42 U.S.C. § 1988 and other applicable law; and
4. Grant such other and further relief as may be appropriate.

Respectfully submitted, this 2nd day of August 2022.


                By: /s/ Edwin M. Speas, Jr.
                    Edwin M. Speas, Jr.
                    N.C. State Bar No. 4112
                    espeas@poynerspruill.com
                    POYNER SPRUILL LLP
                    P.O. Box 1801
                    Raleigh, North Carolina  27602-1801
                    Telephone:  (919) 783-6400
                    Facsimile:  (919) 783-1075


                By: /s/ Michael Crowell
                    Michael Crowell
                    N.C. State Bar No. 1029
                    lawyercrowell@gmail.com
                    1011 Brace Lane
                    Chapel Hill, North Carolina 27516
                    Telephone:  (919) 812-1073

                    *Counsel for Plaintiffs*